Okay, anytime you're ready. Thank you, Your Honor. Good morning, Your Honor. My name is Maliha Haque, and may it please the Court, I am appearing on behalf of the petitioner Amarjeet Singh. Seated at the table is my colleague, Mr. Kartikey Pradhan. In this pre-real ID case, the IJ and the Board affirmed that the petitioner credibly testified as to the fact that he was persecuted in the past on account of his support for the All India Sikh Student Federation. And thus, petitioner is entitled to a presumption that he will be persecuted in the future if he is returned to India. The agency nonetheless abused its discretion when they found that the government had met its burden to rebut that presumption through preponderance of the evidence. The government, in fact, did not meet their burden either by showing that the country conditions have changed to such an extent that petitioner no longer has a well-founded fear or by showing that he could reasonably internally relocate. You don't think conditions have changed? I'm sorry, Your Honor? You do not think conditions have changed in India? Your Honor, they have changed. However, this Court has long held that the analysis about change country condition has to be individualized to the person, to the applicant. In this case, this applicant testified credibly that his family is continually being questioned and harassed and even arrested to know where his whereabouts are. And so for somebody like somebody in his situation, we believe that the situation has not changed if the police continually comes to his family to ask about where he is and to produce him. Well, but the administrative law judge made findings about that, that that was motivated by an effort to get money from the family, presuming that he's making money here in the United States. The judge specifically addressed that question. Yes, Your Honor. And we would submit that this is, in a pre-real ID case, even if part of the motivation was money, the respondent, I mean, excuse me, the petitioner did credibly testify that he was targeted because of, not only because of money, but also because of his affiliation with the Sikh Student Federation. And the petitioner here is entitled to a presumption of well-founded fear. He need not show that he is going to be persecuted. He has already shown that by showing that he was persecuted in the past. So it is the government's burden now to show that by preponderance of the evidence that he will no longer be persecuted. So the fact that the police continue to come means that the country condition that the government has submitted is not tailored to his situation. In fact, the country conditions that they did submit are contradictory regarding what is going to be the situation for Sikh students, for former affiliates of Sikh Student Federation. For example, on page 297 of the record, this is from the government's own country conditions. It says, diaspora Sikhs who have been associated with the militants in the past or with one of the Sikh Student Federation groups would be viewed with suspicion by the police upon return. And this is part of the government's own submission, which was not taken into account either by the IJ or the board. And there is further evidence in that regard that was also rejected by, also not even considered by either the IJ or the board, that, for example, in relation to the internal relocation issue, the government's own submission says that there is little doubt that Punjab police will pursue a wanted suspect throughout India. The fact that they are coming to his house means that the police is still interested and that if the end, and that that country condition supports that if he is, moves elsewhere in India, that the police will pursue him. The government's submissions again say that a Sikh who is wanted and on a police list or fears a State in some way would not now be able to relocate undetected. This is AR 309. None of these things were considered by either the IJ or the board. They basically picked those things that supported their view that this Petitioner will be safe in India. And the board also noted that the fact that Petitioner does not practice any of the five Ks of the Sikh religion means that he is, he will not be targeted elsewhere in India. However, Petitioner is not at risk of being targeted simply because he is a Sikh, but also because he is a supporter, he was a former supporter of the AISSF, whom the police are still interested in, and the government's own submissions support that he will be targeted if he is returned to India. So I see that I still have time remaining. I would like to reserve it. Thank you. Okay. Thank you. We'll hear from the government. Good morning. May it please the Court. Jan Redfern appearing on behalf of Respondent and the Attorney General. Your Honors, the Petitioner has not shown that the evidence compels the conclusion that he is eligible for asylum, withholding of removal and protection under the Convention against Torture. To the contrary, substantial evidence in this case supports the Board's decision that changed conditions in India show the Petitioner is unlikely to face persecution or torture. Specifically, the exhibits 12a and 12b in the record show that the Sikh-related militancy and the violence in Punjab ended in approximately 1995, and that the government no longer pursues individuals unless they're suspected of terrorist activities or criminal activities involved with Sikh-related organizations. And specifically, page 294 of the record shows that they have to be high-profile leaders or violent members of violent organizations. And there are very few of those people remaining years now in 2013. Well, then, how do you account for the fact that the government seems to still have an interest in this particular individual? Well, as the Petitioner himself pointed out, the police come to his family's house to harass him, but he stated two times in the record that the police come to the house only to extort money from the family. Only? Well, mainly. And the exchange. An important distinction, isn't it, given that this is a pretty real idea? That's correct, Your Honor. The immigration judge did say, so the main focus here is they want money from your family because that's what they do. And he said, yes. And there's no evidence that they want the Petitioner. In light of the changed conditions in India, there's no evidence that they want the Petitioner solely because or mainly because. But isn't it enough if it's in part because? Yes. Maybe post-Real ID Act, I'm with you, but pre-Real ID Act, isn't it? Pre-Real ID Act, correct, Your Honor. But in this case, because of the changed country conditions, the evidence shows that the police are only interested in high-profile militants. And the Petitioner in this case was not a high-profile militant. He wasn't even a member of an organization. He was only a supporter, a rank-and-file supporter of an organization that no longer is being harassed or the police are not looking for members of those organizations and they're really not spending their resources on looking for people who are low-level members or supporters of these types of organizations. And the record states that whereas before, page 296, virtually every seat could have been at risk of persecution, that's simply not the case today. Even those that were previously arrested, such as Petitioner here, the police really virtually have lost interest in them. And this case is more akin to Gonzalez v. Hernandez, where the court held there that a Guatemalan citizen no longer had a well-founded fear in Guatemala because, based on his political opinion, because the country reports in that case stated that the only people that the police were interested in were party leaders and high-profile activists, and only those people would be subjected to mistreatment. That's the same as the case here. And in Gonzalez-Hernandez, the Petitioner was not a high-profile activist. He wasn't a party leader. And in this case, the Petitioner admits that he was only a supporter of the organization. He was a farmer. He wasn't even a student. He only supported the ideas of the organization. And so in that case, remind me, was there evidence that there was continued interest nonetheless in that particular Petitioner? In that Petitioner, I believe that there was, and there was also a relocation finding in that case as well. Am I right that the relocation finding here, that's just out? Correct, Your Honor. The board did address that the immigration judge had made a relocation finding and did also state that millions of Sikhs live peacefully outside Punjab, millions of Sikhs, but it didn't specifically affirm the relocation finding. So we're left with a dispositive finding that changed conditions in India would support the fact that the government rebutted the presumption of future persecution. If we did not accept that argument, right, and we thought that the BIA, there wasn't substantial evidence to support defining that the presumption was not rebutted. Well, it's not clear why the board did not. My question? I'm sorry. I have a very specific question. Let's say we don't accept your main argument here. Okay? We say that the presumption was not rebutted. What happens to the Petitioner's cat claim? Is that, could we, does that have to go back and be reassessed in light of the fact that the presumption had been rebutted? No, because there's no presumption for cat protection, the Petitioner has to make a showing of future persecution as an ongoing and a forward-looking type of protection. And the Petitioner, because there's no presumption, the Petitioner still has to show, substantial evidence shows that he would be tortured in the future if returned to India. And there's absolutely no evidence that that's the case, particularly given the facts that police are losing interest in people who are no longer high profile or never were party leaders. Also, the evidence about the fact that there are, the police are no longer acting with impunity in these cases, and abuses have been acknowledged and investigated by the Supreme Court, condemned by the Supreme Court, and human rights groups have formed and they have storefront offices that are better able to address abuses by Petitioners, such as Petitioner. Two principal organizations made visible progress within the country in correcting police abuse. And the Board also considered that there are avenues for Petitioner to seek relief if he comes within the hands of the police, but that really is not really going to be the case, as the government showed through the evidence Exhibits 12a and 12b that the Petitioner will no longer be subject to police scrutiny and that he doesn't run the chance that he will be picked up by the police and abused in their custody. If there are no further questions, thank you very much. Roberts. Thank you, counsel. You have some time remaining for rebuttal. Just a couple of points, Your Honor. Petitioners, there's a high likelihood of chance that the police will target Petitioner again because they continue to do so right up until the last hearing with the IJ in 2007. So clearly, the police have a continued interest in Petitioner and can and will find him and persecute him further. Further, it's important to, I believe, emphasize that Petitioner has the presumption here, and the government's country conditions are at best contradictory regarding whether somebody who was a supporter of the Sikh Student Federation, who the police continue to be interested in, whether that specific person is now safe in India. Surely, conditions have improved. That's undisputed. However, have they improved as to this Petitioner? We believe that the government has not met their burden to show that. Thank you. Okay. Thank you, counsel. We appreciate the arguments, and the case just argued will stand submitted. That concludes our calendar for this morning, and the Court will stand in recess.
judges: Lynn, Noonan, Watford